ROBERT J. NOLAN

**8307**

versus

PELICAN COLD STORAGE & WAREHOUSING CO., LTD.

NO. 8307

COURT OF APPEAL

PARISH OF ORLEANS

WILLIAM A. BELL, JUDGE·

June 19th, 1922.

Court of Appeal
Parish of Orleans
FILED June 19-22
~Stansbury~

**8307**

628

BY: WILLIAM A. BELL, JUDGE:

Plaintiff sues defendant for the value of a
certain quantity of egg yolks alleged to have been deposited
with defendant, doing business in this City as a cold storage
and warehouse company. The petition sets forth that under a
verbal agreement the eggs were deposited with the defendant
during the months of November and December of 1919, by Swift
& Company, for account of plaintiff; that on the dates of de-
posit the eggs were in good condition and frozen; that between
November 11th, 1919, and December 20th, 1919, plaintiff withdrew
on different dates twenty-seven cases of frozen egg yolks, all
of which were in good condition and frozen, and had been properly
kept by defendant; that on January 15th, 1920, plaintiff started
to withdraw the remainder of the deposit, out that same was in
bad condition, unfrozen, unfit for use, and absolutely worthless,
all due to the fault of defendant in not keeping them properly.
Claiming the value of the spoiled eggs to be $801.90 at the
time of deposit, the petition concludes with prayer for judgment
in said amount, and legal interest from judicial demand.

Defendant answers that plaintiff is without
right of action, and in the same pleading responds to the merits
by denying its liability, though admitting that the deposits as
alleged, were made, not verbally, but under a written contract
specially pleaded and made part of the answer, and further res-
ponding, it denies that the eggs were frozen on the dates of
deposit, inasmuch as there was no examination made of the eggs
at the time of delivery or deposit with defendant. It is also
denied by respondent that at the time of the withdrawals that
the eggs were in good condition and frozen, respondent again
stating that it was not apprized of the condition of the eggs
at the time of their said withdrawal, but it specifically alleges

that all of the deposit while same existed. was properly kept by defendant. It is then specially denied that the bad condition of the withdrawals and their worthlessness was caused by its fault in not keeping them properly.

Appeal has been taken to this court from a judgment of non-suit dismissing plaintiff's demand.

There has been very little evidence offered in this case, and all of the testimony taken at the trial in the lower court was that offered by plaintiff himself and by a witness whom he called and who was in the employ of Swift & Company, plaintiff's agent of deposit. Plaintiff's testimony is to the effect that he himself did not make the deposit in question, that it was made through Swift & Company as agent, and that he was not present at the time of the deposit, and could not, of his own knowledge, testify as to the condition of the egg yolks at that time. He does swear, however, that on the occasion of all the withdrawals except the last, between the dates aforementioned, that the eggs were all in good condition and frozen, but that on February 2nd, 1921, the date of the last withdrawal, that said eggs were thawed out and in bad condition.

He admits having discovered this condition upon visiting the cold storage room where the eggs were kept, but he does not testify, nor does anyone else, as to the temperature of the warehouse, either at the time of the deliveries or of the withdrawals.

It appears from his testimony that the eggs in question were bought by Swift & Company, who were directed by plaintiff to store same with the defendant company, and that when they were bought from Swift & Company that plaintiff did not examine them. nor did Swift & Company, his agent. At the time of the examination of the eggs claimed in this suit to have been spoiled, it appears that there was present with plaintiff a young boy in the employ of the defendant company, who plaintiff has not seen fit to summon, or to show that this young man, the only witness present at the time of the examination of the re-

630

jected eggs, knew either the condition of the eggs or the temperature of the warehouse. Upon cross-examination plaintiff admits that he rejected other eggs on or about the time that the eggs in question were rejected, and that these other eggs were subsequently taken by the firm of J.L. Beer & Company, and plaintiff admits that these eggs taken by Beer & Company and stored in defendant's warehouse by Goodman & Beer, though rejected by plaintiff, were not so rejected because of the same not being frozen, but on the contrary, that they were frozen, he refusing to take them because the whites of the eggs were no good. He admits, however, that these same rejected eggs were in fact accepted by Goodman & Beer, and that they were undoubtedly frozen. He also admits that he never did business with any other house than the defendant company, and that in all previous transactions the eggs deposited were always kept in good condition.

Correspondence between the defendant company and plaintiff has been offered and received in evidence, and consists of two letters, bearing date long subsequent to the institution of this suit. This proceeding was filed on November 26th, 1920, and on the respective dates of March 7th, 1921, and February 24th, 1921, the defendant wrote letters quite similar in their wording, and both to the effect that the eggs in storage for plaintiff's account, and which had been there for some time, had deteriorated, and the defendant feared that if kept there any longer they would have a bad effect on other articles in the warehouse, and that therefore, it was absolutely necessary that plaintiff should advise the company at once as to the disposition he wished to have made of them, as same would have to be removed from storage.

However, there is not a scintilla of evidence in the record to show that the condition of the eggs at the time of their attempted withdrawal and final rejection by plaintiff, was spoiled due to any fault of the cold storage warehouse company, or that the said defendant had in any manner failed to

comply with any of the conditions of what the record shows was not a verbal, but in fact, a written agreement, or cold storage warehouse contract. There being no proof in the record that between the times of the several deliveries for storage and the several withdrawals and final rejection, that defendant was ever at fault in his contract, or that the eggs as deposited were in good condition at the time of the deposits, or in bad condition at the time of any of the withdrawals or of the rejection, and these facts, if possible of proof, being a burden which the law imposes specifically upon the plaintiff, it follows that plaintiff has not made out a case against the defendant, and that he was properly non-suited.

Had the evidence established at the outset that the eggs at the time of delivery were all in good condition, and that the total delivery, or any part thereof, at time of withdrawal, were in bad condition through some fault of the defendant, the burden would have shifted to the defendant, under the law, to overcome the presumption that it was at any time at fault under its contract.

Plaintiff's suit predicated upon allegations of a verbal contract, shown never to have existed, could have been dismissed upon the exceptions herein filed, but, defendant electing to set-up in its answer a written contract, has forced the plaintiff to record-admission of said written agreement. Under this situation plaintiff made unsuccessful objections to the offer of the written document, urging, as he has again done before this court in argument and brief, that the instrument in question is null and void. The document, that is clause "3" thereof, claimed by plaintiff to be a nullity under the law, and jurisprudence of Louisiana, reads as follows:

> "IT IS FURTHER AGREED that this Company does not in any manner guarantee the preservation of property stored or the maintenance of temperature where stored, unless a special contract in writing be made identified with this receipt and noted hereon, in which case goods will be inspected and examined at the cost

of the storer, and the goods then stored
at contract temperature and preservation
guaranteed, provided that in case of ac-
cidents or fortuitous events, as stated
in paragraph 2, that said Company shall
have like right to terminate the contract,
and all claims or reclamations for damages
or otherwise, shall be made by said storer
within 24 hours after the repossession of
goods.

And the Company further reserves
the right to refuse to enter into such
special contracts, either for goods
stored or otherwise."

Sec. 3 - Part I of Act 221 of 1908

provides:

"Form of Receipts - What Terms May
Be Inserted: A warehouseman may insert
in a receipt issued by him any other terms
and conditions, provided that such terms
and conditions shall not -

(a) Be contrary to the provisions
of this Act;
(b) In any wise impair his obligation
to exercise that degree of care
in the safe-keeping of the goods
entrusted to him which a reason-
ably careful man would exercise
in regard to similar goods of
his own."

It is argued by counsel for plaintiff that the
above provision of the law governing warehouse receipts, defining
warehousemen and fixing their qualifications and duties, etc., is
an express prohibition against the insertion of such a clause
as clause "3" above quoted. In support of this contention, we
are referred particularly to the case of Marx et al v. New Orleans
Cold Storage Company, 107 La. 172.

Before discussing the cited authority which
we have had repeated occasion to examine, we would observe that
we find nothing in the language of clause "3" of the contract which
could be said to fall within the prohibitions of Sec. 3 of Act
221 of 1908. This Section of the Act should be read and con-
strued with Sec. 21 of the same Act which provides:

## PART II.

### OBLIGATIONS AND RIGHTS OF WAREHOUSEMEN
### UPON THEIR RECEIPTS.

### Section 21. - Liability for Care of Goods.

> "A warehouseman shall be liable
> for any loss or injury to the goods caused
> by his failure to exercise such care in
> regard to them as a reasonably careful
> owner of similar goods would exercise, but
> he shall not be liable, in the absence of
> an agreement to the contrary, for any loss
> or injury to the goods which could not have
> been avoided by the exercise of such care."

Most careful analysis of the opinion in Marx et al v. N.O. Cold Storage Company does not bring us in accord with plaintiff's contention that the Supreme Court has held that such clauses as either Clause "3" now under consideration, or the somewhat similar clause "or heading" found in the contract then under the court's review, are contractual provisions, contra bonos mores, and therefore prohibitory. We have no such understanding of either the statute or jurisprudence. The above decision of the Supreme Court though rendered long prior to Act 221 of 1908, has not, in our opinion, been qualified by the provisions of the later statute. The opinion of the Court was based not upon conclusions of law that the contract in question was unlawful, and therefore null and void, but upon the facts found by the Court that the defendant, the N.O. Cold Storage Company, had received, to its own knowledge, a greater quantity of peas than it could safely admit at one time into its cold storage. On this point the Court said:

> "We can explain the deterioration
> of the peas in no other way than by
> assuming that the superintendent was
> not cautious enough and did "endanger"
> the temperature of his cold storage
> by letting in the peas too fast, or
> in too great quantities."

It was also noted by the Court that the defendant in that case had been sued on its general liability as a cold storer and had answered by a general denial not pleading, as in the case now before us, any special contract. Proceeding then to a discussion of the limited liability clause found in

the defendant's printed warehouse receipt and which plaintiff in the instant case claims to be similar to the contract now before us, the court ventured the opinion that if such a clause had been specially pleaded it would not have relieved the cold storer from its obligations to preserve the goods in the condition in which they were received. It cannot be said that because of the court's declaration that it is the duty of a cold storer "to preserve the goods in the condition in which they were received" that the clause then under consideration was null and void and not enforceable between the parties. Upon re-hearing, the Court in its opinion adhered to its former ruling, except as to certain allowances for storage fees, and proceeded to say:

> "Our decision found that the heaps of peas were too large, and that the defendant did not sufficiently look after the ventilation of the cold air it controls. After a re-examination, we are not satisfied that an error has been committed. Defendant places great reliance upon the receipt it gave for the peas and the limited liability clause printed therein. We understand that the defendant can limit its liability, and that those who sign the limited clause will be bound by its terms. But in this case oversight and negligence have been found, which are not covered by the limited liability clause of the receipt, and from which we do not understand from the testimony, that it ever was the intention to relieve the defendant. Certainly the language used leads to such inference.
>
> One may stipulate waiver as extensive as he pleases, provided it does not contravene rules and laws enacted on grounds of public policy. The waiver must express the full extent intended."

In the case before us clause "1" of the contract reads as follows:

> "1 – It is agreed between the parties hereto that said Company has not inspected nor examined the condition of the goods below described, is not bound by the contents marked, nor for damages already sustained."

Plaintiff in this cause has failed to assume the burden of proof which is entirely his, by not showing

conclusively that the egg yolks when deposited were in good condition, or that the defendant failed by insufficient temperature or other wise to preserve the goods in the condition in which they were received.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and the same hereby is affirmed at plaintiff's cost in both courts.

JUDGMENT AFFIRMED.